UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Edith Madora Hudson,

       Plaintiff,

v.                                          Civ. No. 04-3313 (JNE/FLN)
                                          ORDER

City of Minneapolis, John R. Mills,
Robert Olson, and William McManus,
individually and in their official capacities,

       Defendants.

---

Albert T. Goins, Esq., Goins & Wood, P.C., appeared for Plaintiff Edith Madora Hudson.

C. Lynne Fundingsland, Esq., Minneapolis City Attorney's Office, appeared for Defendants City of Minneapolis, Robert Olson, and William McManus.

---

Edith Madora Hudson brought this 18-count action against the City of Minneapolis, John R. Mills, Robert Olson, and William McManus, individually and in their official capacities, after former Minneapolis Police Officer Mills allegedly took lewd photographs of and sexually assaulted her while she was in the back of a police car.  Hudson asserts claims for various intentional torts, negligent hiring, negligent retention, and negligent supervision.  In addition, Hudson asserts claims under 42 U.S.C. §§ 1983, 1985 (2000), as well as the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A.01-.41 (2004).  The matter is before the Court on the motion of former Chief of Police Olson, Chief of Police McManus, and the City of Minneapolis (collectively, City Defendants) for summary judgment.  For the reasons set forth below, the Court grants in part and denies in part City Defendants' motion.

## I.   BACKGROUND

Hudson, an African American female, alleges that on three occasions in late July and early to mid August 2003, Mills had sexually explicit encounters with her.  Hudson asserts that on two occasions Mills took sexually explicit photos of her in the back of a squad car.  On the third occasion, Hudson asserts Mills took explicit photos of and sexually assaulted her while she was locked in the back seat of a squad car.  The first encounter occurred on or about July 24, 2003, the second about one week later, and the third "several days after" the second encounter, "in early to mid August 2003."  After the third encounter, Hudson claims four officers asked her about an officer who had allegedly photographed her.  Hudson asserts she told these officers what Mills had done and gave them his squad car number.  Hudson also alleges that three times between July 24, 2003, and mid August 2003, she told Officer Matthew Blade that Mills was taking photos of her.  Hudson also asserts that she told Officer Tony Caspers "about what Mills had done during this time period in early August 2003."

On August 3, 2003, Sergeant Donald Smulski of the Third Precinct received information from Officer Caspers regarding allegations that Mills was taking inappropriate photos.  The next day Sgt. Smulski spoke with Officer Billy Peterson, who provided Hudson's identity.[1]  On August 8, 2003, Sgt. Smulski sent a memorandum to the Minneapolis Police Department's (MPD) Internal Affairs Unit (IAU), indicating that Officer Caspers had received information from street sources that Mills had engaged in questionable behavior with prostitutes.[2]

---

[1]     A summary of the Internal Affairs Unit investigation into the allegations against Mills notes Officer Peterson acknowledged that Hudson approached him during the last week of July and told him a uniformed officer had taken pictures of her.

[2]     Officer Caspers testified during his deposition that on or around August 3, 2003, he had a brief conversation with a Caucasian female prostitute who indicated that Mills was taking pictures of some females who worked in the area.

On August 17, 2003, Minneapolis Police Officers arrested Hudson on weapons, narcotics, and auto theft charges.[3]  She was placed in Hennepin County Jail.  On or about August 25, 2003, Sgt. Robert Krebs of the IAU was assigned to investigate the allegations against Mills.  The next day he interviewed Hudson at the Hennepin County Jail.  Hudson declined to identify Mills or to assist in the investigation.  In a subsequent interview on September 3, 2003, Hudson identified Mills from a photo-lineup.  The "Case Investigation" indicates that on September 4, 2003, Sgt. Krebs, in consultation with others, determined that additional investigation should be pursued to corroborate Hudson's statements.  Surveillance of the on-duty activities of Mills was done on September 9, 10, 11, and 13.

On September 18, 2003, after being released from jail, Hudson told the IAU that in addition to taking photos, Mills had sexual contact with her.  On that same day, Sgt. Krebs referred the allegations against Mills to the Sex Crimes Unit for criminal investigation.  Sgt. Martinson was assigned the matter.  The criminal investigation was ultimately discontinued on October 3, 2003.  On October 6, 2003, the IAU sent Mills a letter informing him that he was being investigated.[4]  On October 21, 2003, Sgt. Krebs interviewed and obtained a formal statement from Mills.  Mills acknowledged taking lewd photos of Hudson on July 24, 2003, and agreed to turn over images from his camera and personal computer.  The IAU investigation concluded that Mills took lewd photos of Hudson.  On October 24, 2003, Mills was relieved of duty and placed on home assignment.  Following the IAU investigation, Mills was charged with violating the Code of Ethics.  A hearing was held to allow Mills to respond to the charges.  The panel recommended termination and Mills was officially discharged effective March 3, 2004.

---

[3]     The federal government later charged Hudson for a weapons violation under federal law.

[4]     Earlier on October 6, 2003, Mills contacted the IAU to inquire if there was an investigation pending that involved allegations against him.

## II.      DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A.      Section 1983

In Count Six of her Complaint, Hudson alleges City Defendants failed to prevent a constitutional violation.  In Count Seven, Hudson alleges the City of Minneapolis has an unconstitutional policy, procedure, or practice of failing to properly train, supervise, and discipline officers.  Hudson argues City Defendants are liable for failing to supervise Mills and failing to take remedial action after learning of repeated incidents of misconduct committed by Mills.[5]

---

[5]      In her motion papers, Hudson argues only that City Defendants are liable under § 1983 for a failure to take remedial action, failure to supervise, and failure to prevent a constitutional violation.  The Court therefore addresses only those theories and considers Hudson to have waived any alternative theories.

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

It is well-established that a governmental entity cannot be held liable under § 1983 on a respondeat superior theory. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Thus, a government body cannot be liable under § 1983 merely because it employs a tortfeasor. *Id.* at 691-92. In *Monell*, the Supreme Court held that municipalities and other local governmental entities could be sued under § 1983 only for the entity's unconstitutional or illegal policies or customs. *Id.* at 694. For a municipality to be liable under § 1983, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the constitutional violation." *Id.* An official policy involves a deliberate choice to follow a course of action made from among various alternatives by an official who is determined by state law to have the final authority to establish governmental policy. *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998). Alternatively, a custom is demonstrated by: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) the plaintiff's injury by acts pursuant to the governmental entity's custom, *i.e.*, proof that the custom was the moving force behind the constitutional violation. *Id.*

A municipality that fails to take remedial action after having learned of repeated incidents of misconduct committed by police officers may be deemed to have been deliberately indifferent to such misconduct. *See Harris v. City of Pagedale*, 821 F.2d 499, 506 (8th Cir. 1987). To

prevail on her claim for a failure to supervise under § 1983, Hudson must establish that City Defendants (1) received notice of a pattern of unconstitutional acts committed by subordinates; (2) demonstrated deliberate indifference or gave tacit authorization of the acts; (3) failed to take sufficient remedial action; and (4) that such failure proximately caused injury to her.  *See Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997).  In order to establish City Defendants' liability for a failure to prevent a constitutional violation, Hudson must show that City Defendants had knowledge of prior instances of police misconduct and deliberately failed to take remedial action.  *See Parrish v. Luckie*, 963 F.2d 201, 204 (8th Cir. 1992); *Harris*, 821 F.2d at 504.

Hudson claims that the IAU and supervisory administrative officers failed to act despite repeated reports of Mills' misconduct from multiple sources.  Specifically, Hudson contends that a question of fact exists on her § 1983 claims against City Defendants because she reported Mills' conduct to several officers in late July or early August and Mills' conduct was "well-known to the denizens of Lake Street."   Hudson also asserts that City Defendants failed to conduct a meaningful and prompt investigation into Mills' activities, thus evidencing their deliberate indifference.

Based on this record, the Court finds that Hudson's § 1983 claims fail as a matter of law.  First, there is no evidence in the record of a "pattern and practice" of misconduct by Minneapolis police officers.  *See Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (finding two instances of prior misconduct do not indicate a persistent and widespread pattern).  Aside from complaints made in late July and August 2003 involving Mills' interaction with Hudson, there is no evidence in the record indicating Mills had any prior complaints against him.  Instead, City Defendants submitted evidence that until the incidents involving Hudson, no complaints were filed against Mills at either the Civilian Review Authority or IAU and Mills was not

recommended for any disciplinary action.  In addition, Hudson submitted no evidence that City Defendants received any complaints of sexual misconduct (in particular misconduct involving taking lewd photos) on the part of officers generally.[6]   Second, there is no evidence that City Defendants were deliberately indifferent to or gave tacit approval of any such pattern of unconstitutional conduct.  The only complaints brought to City Defendants' attention related to the incidents between Mills and Hudson.  After Sgt. Smulski learned of Mills' alleged behavior, he forwarded the information to the IAU, who investigated the complaints and ultimately discharged Mills.  Finally, Hudson has failed to demonstrate that any such alleged deliberate indifference on the part of City Defendants was the "moving force" behind Mills' actions and her injury.  Accordingly, the Court grants City Defendants' motion for summary judgment on Hudson's § 1983 claims.  The Court dismisses Count Six insofar as it is asserted against City Defendants.  The Court also dismisses Count Seven.

## B.    Section 1985

In Count Eight of her Complaint, Hudson alleges a claim under 42 U.S.C. § 1985 for conspiracy to deprive her of her civil rights.  City Defendants argue this claim should be dismissed because Hudson's conspiracy allegations are speculative and there is no evidence in the record to support them.  Hudson did not address City Defendants' arguments in her opposition brief.

To prove a § 1985 conspiracy claim, Hudson must demonstrate City Defendants conspired for the purpose of depriving, either directly or indirectly, a person or class of persons

---

[6]    Hudson relies in part on a practice of some police officers of taking photos of individuals as a custom of unconstitutional conduct.  City Defendants do not deny that some officers take face-shots of suspected street-level criminals for identification purposes.  Hudson has not proffered any facts or argument to support the unconstitutionality of such a practice.

of the equal protection of the laws, or of equal privileges and immunities under the laws.  *See Andrews*, 98 F.3d at 1079.  She must also demonstrate that one or more of the conspirators did, or caused to be done, any act in furtherance of the object of the conspiracy, whereby she was injured or deprived of having and exercising any right or privilege of a citizen of the United States.  *Id*.  Finally, Hudson must demonstrate that the conspiracy was fueled by some class-based, invidiously discriminatory animus.  *Id*.

Hudson has failed to put forth any evidence of an agreement to violate Hudson's constitutional rights.  *See id*.  Moreover, Hudson has failed to put forth evidence of any discriminatory animus toward women or African Americans on the part of City Defendants.  Therefore, the Court grants City Defendants' motion for summary judgment on this claim and dismisses Count Eight insofar as it is asserted against City Defendants.

**C.**     **State-law claims**

*1.*     *Respondeat superior*

a.     Intentional torts

Hudson alleges City Defendants are liable for Mills' tortious acts under the theory of respondeat superior.[7]  Hudson's tort claims include assault (Count One), battery (Count Two), intentional infliction of emotional distress (Count Three), invasion of privacy (Count Nine), and false imprisonment/false arrest (Count Thirteen).

---

[7]     Hudson relies on Minn. Stat. § 466.02 (2004), which provides:

> Subject to the limitations of sections 466.01 to 466.15, every municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function.

Under the doctrine of respondeat superior, an employer is vicariously liable for the torts of an employee committed within the course and scope of his or her employment. *Fahrendorff v. N. Homes, Inc.*, 597 N.W.2d 905, 910 (Minn. 1999). "Such liability stems not from any fault of the employer, but from a public policy determination that liability for acts committed within the scope of employment should be allocated to the employer as a cost of engaging in that business." *Id*.

The Minnesota Supreme Court has explained that an employer may be held liable for the intentional misconduct of its employees when (1) the source of the attack is related to the duties of the employee, and (2) the assault occurs within work-related limits of time and place. *Id*. In determining whether an attack is related to an employee's duties, Minnesota law focuses on the foreseeability of the employee's actions. *Id*. at 912. The Minnesota Supreme Court has explained that conduct is foreseeable in the respondeat superior context if it "is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." *Id*. In contrast, foreseeability in a negligence sense involves determining "the level of probability which would lead a prudent person to take effective precautions." *Id*. In *Fahrendorff*, the Minnesota Supreme Court determined there was a genuine issue of material fact with respect to whether a group home counselor's sexual misconduct was foreseeable in the respondeat superior context based in part on an expert opinion that such abuse was a well-known hazard and the conclusion that the counselor's actions, though wrong, were related to his duties as a counselor. *Id*. at 911-12.

City Defendants concede Mills acted in work-related limits of time and space. However, they contend Mills' actions were neither related to his duties as a police officer nor foreseeable. Hudson asserts it was foreseeable to City Defendants that Mills might take lewd photos of

Hudson.  In particular, Hudson argues that because Mills and other officers took pictures of street-level criminals for identification purposes and because City Defendants received information that Mills took inappropriate photos of alleged prostitutes, it was foreseeable that Mills would take lewd photos of Hudson.

Hudson has not presented evidence demonstrating that sexual misconduct is a foreseeable risk of employing a police officer.  In particular, Hudson has failed to proffer any evidence of police policies or procedures for transporting, questioning, or searching persons designed to minimize the risk of sexual misconduct.  In addition, Hudson failed to direct the Court to any expert testimony or affidavits demonstrating that sexual misconduct between a police officer and an alleged street-level criminal is a well-known hazard.  *See, e.g.*, *P.L. v. Aubert*, 545 N.W.2d 666, 667-68 (Minn. 1996) (concluding summary judgment for school district was appropriate in light of lack of evidence, such as expert testimony or affidavits, demonstrating that a sexual relationship between teachers and students is a "well-known hazard"); *cf. Fahrendorff*, 597 N.W.2d at 912 (finding evidence, including affidavit of expert stating sexual behavior is a well-known hazard in the field, sufficient to raise a fact issue regarding the foreseeability of sexual assault); *Marston v. Minneapolis Clinic of Psychiatry and Neurology, Ltd.*, 329 N.W.2d 306, 310-11 (Minn. 1982) (finding fact issue as to whether employer was liable on a respondeat superior claim for a psychologist's sexual misconduct with a patient where plaintiff provided expert evidence that sexual relations between a psychologist and patient is a well-known hazard). The lack of such evidence is crucial because in assessing respondeat superior liability, courts determine whether the "overall nature of the employer's business and the employee's duties are such that, as a policy matter, vicarious liability for intentional torts is a 'foreseeable cost of doing

business.'"  *See Longen v. Fed. Express Corp.*, 113 F. Supp. 2d 1367, 1372 (D. Minn. 2000) (quoting *Fahrendorff*, 597 N.W.2d at 912).

Instead, Hudson relies on evidence relating to the fault of City Defendants.  For example, Hudson submits evidence that some officers have a practice of taking pictures of street-level criminals for identification purposes and that in late July and early August, City Defendants received information that Mills took questionable photographs of Hudson.  In addition, Hudson attempts to bolster her argument of foreseeability by pointing out that other officers thought Mills was "perverted."  This evidence alone is insufficient to raise a factual issue regarding respondeat superior liability.  *See id.* at 1372-73 (noting marginal relevance of employee's past conduct to the issue of vicarious liability under doctrine of respondeat superior).  First, while Hudson's complaints may be sufficient to give rise to direct liability, they do not automatically give rise to vicarious liability.  *See id.* (concluding evidence regarding prior complaints without further evidence of foreseeability is insufficient to give rise to vicarious liability); *see also M.L. v. Magnuson*, 531 N.W.2d 849, 856 n.3 (Minn. Ct. App. 1995) (explaining distinction between respondeat superior liability and negligent employment theories).  This is particularly true in light of the fact that the complaints upon which Hudson relies relate specifically to the incidents at issue in this case and do not address the foreseeability of sexual misconduct by police officers generally.  Second, while Sgt. Smulski indicated other officers preferred not to work with Mills because they perceived him to be "perverted," he also testified that he was not aware of this perception in early August.

For the reasons discussed above, the Court finds that even though the alleged acts occurred within work-related limits of time and place, Hudson has failed to raise a genuine issue of material fact with respect to whether Mills' actions were foreseeable for purposes of imposing

vicarious liability on City Defendants.  *See Aubert*, 545 N.W.2d at 669.  Therefore, the Court grants City Defendants' motion for summary judgment with respect to Hudson's claims against City Defendants in Counts One, Two, Three, Nine, and Thirteen.[8]

        b.        Negligent infliction of emotional distress

Hudson also argues City Defendants are liable for negligent infliction of emotional distress under the theory of respondeat superior.[9]  To maintain a claim against City Defendants for vicarious negligence, Hudson must show Mills was acting at least partially in furtherance of City Defendants' interests.  *See Longen*, 113 F. Supp. 2d at 1374; *Marston*, 329 N.W.2d at 310.

Hudson asserts Mills forced her to pose for sexually explicit photos while she was in a squad car and while he was in uniform with access to a gun.  Although the evidence demonstrates that Mills acted in work-related limits of time and space, Hudson has not presented evidence of the precipitating cause of Mills' actions.  *See Longen*, 113 F. Supp. 2d at 1374 (no vicarious negligence liability for employee's sexual assault where precipitating cause of the assault was personal desire for gratification).  Hudson has failed to raise a factual issue and no reasonable juror could conclude that Mills committed the alleged acts with any purpose to further City Defendants' interests.  Therefore, the Court dismisses Count Four insofar as it is asserted against City Defendants.

---

[8]      City Defendants argue they are not liable for Mills' tortious acts because they are not required to indemnify Mills under Minn. Stat. § 466.07 (2004).  Because the Court concludes City Defendants are not liable under the theory of respondeat superior, it need not address this argument.

[9]      In her Complaint, Hudson alleges "all Defendants placed Plaintiff in a zone of danger." However, in her opposition papers, Hudson argues City Defendants are vicariously liable for Mills' negligent infliction of emotional distress.  Therefore, the Court considers that to be her only theory of recovery against City Defendants on this claim.

2.     *Negligent employment theories*

In Counts Ten, Eleven, and Twelve, Hudson alleges City Defendants were negligent in hiring, retaining, and supervising Mills.  Negligent employment theories are distinct from the doctrine of respondeat superior.  *See Magnuson*, 531 N.W.2d at 856 n.3.  Where respondeat superior imposes vicarious liability on an employer for all acts of its employees that occur within the scope of employment, regardless of the employer's fault, negligent employment theories impose direct liability only where the claimant's injuries are the result of the employer's failure to take reasonable precautions.  *Id*.  Unlike liability based on respondeat superior, in an action against an employer based on negligence, liability is predicated on the fault of the employer. *Fahrendorff*, 597 N.W.2d at 912.  In the context of a negligence claim, foreseeable means a level of probability that would lead a prudent person to take effective precautions.  *Id*.

a.     Statutory immunity

City Defendants argue they are entitled to statutory immunity on Hudson's negligent employment claims under the discretionary function exception set forth in Minn. Stat. § 466.03 (2004).  That section provides that tort liability for municipalities under Minn. Stat. § 466.02 does not apply to "any claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."  Minn. Stat. § 466.03, subd. 6.  City Defendants argue this immunity extends to its hiring, supervision, and retention decisions.

Discretionary immunity, sometimes referred to as statutory immunity, is "based on the separation of powers and is intended to prevent judicial review, through the medium of a tort action, of executive and legislative policy-making decisions."  *Fear v. Indep. Sch. Dist 911*, 634 N.W.2d 204, 210 (Minn. Ct. App. 2001); *see also Holmquist v. State*, 425 N.W.2d 230, 231

(Minn. 1988) (discussing discretionary function exception of Minn. Stat. 3.736 (1982)). The Minnesota Supreme Court has stated:

> If a governmental decision involves the type of political, social and economic considerations that lie at the center of discretionary action, including consideration of safety issues, financial burdens, and possible legal consequences, it is not the role of the courts to second-guess such policy decisions.

*Watson by Hanson v. Metro. Transit Comm'n*, 553 N.W.2d 406, 412 (Minn. 1996).

In defining a discretionary act, courts distinguish between operational and planning decisions. *Minder v. Anoka County*, 677 N.W.2d 479, 484 (Minn. Ct. App. 2004). Planning decisions involve issues of public policy and are protected discretionary decisions. *Fear*, 634 N.W.2d at 210. Operational decisions relate to the day-to-day functioning of government and are not protected. *Id.* The critical inquiry is whether the act involved a balancing of policy objectives. *Id.* The party asserting immunity has the burden of showing particular facts that demonstrate it is entitled to immunity. *Id.* at 209.

City Defendants assert that the hiring, supervising, and retaining of police officers are policy-level activities protected by statutory immunity. However, City Defendants have not proffered any evidence to support this assertion.[10] In particular, the Court discerns nothing in the record demonstrating their decisions regarding the hiring, supervision, and retention of Mills involved protected policy-level activities as opposed to unprotected day-to-day operational decisions. The record is silent as to City Defendants' decision-making process or how its decisions regarding Mills' employment fit into any such process. Accordingly, the Court cannot

---

[10] City Defendants rely on *Fear* to support their statutory immunity argument. In *Fear*, the Minnesota Court of Appeals determined that a school district was protected by statutory immunity for its hiring, training, and supervision of employees. *Fear*, 634 N.W.2d at 212. The court in *Fear,* however, noted that affidavit testimony supported the school district's claim that its hiring, training, and supervision of school employees were policy-level activities. *Id.* at 211. Here, the Court has been presented with no evidence that City Defendants' decisions with respect to Mills' were at the policy-level.

ascertain whether City Defendants' acts involved the balancing of policy objectives and, therefore, finds that City Defendants are not entitled to summary judgment on statutory immunity grounds.

       b.     Negligent hiring

A claim of negligent hiring is predicated on the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which it should have been foreseeable that the hired individual posed a threat of injury to others because of the circumstances of the employment. *See Ponticas v. K.M.S. Invs.*, 331 N.W.2d 907, 911 (Minn. 1983); *Yunker v. Honeywell, Inc.*, 496 N.W.2d 419, 422 (Minn. Ct. App. 1993). Liability for negligent hiring "is determined by the totality of the circumstances surrounding the hiring and whether the employer exercised reasonable care." *Yunker*, 496 N.W.2d at 422.

Hudson asserts Mills had a propensity to engage in sexually explicit activity. To support this assertion, Hudson relies on Mills' testimony that he has an addiction to pornography and Sgt. Smulski's testimony that other officers thought Mills was a pervert. Hudson further claims City Defendants knew of Mills' propensity. Moreover, Hudson asserts that Minneapolis' hiring procedures are not reasonable because they do not screen for propensities such as sexual addiction.

In this case, City Defendants performed a background check, including a psychological evaluation of Mills, prior to hiring him. The psychological evaluation consisted of approximately six hours of examination and a 45-minute personal interview with a licensed psychiatrist. The evaluation complies with the guidelines of the International Association of Chiefs of Police. One of over ten tests administered to Mills, the Minnesota Multiphasic

Personality Inventory-2, is designed to assess psychological problems, such as depression, anxiety, anti-social behavior, alcoholism, aggressiveness, impulsiveness, paranoia, and lack of anger control.  Some questions probe into potential sexual problems.  The psychological evaluation did not indicate Mills had a sexual or pornographic obsession.  Further, nothing in his background investigation indicated that Mills was unfit to be a police officer.

Viewing the evidence in the light most favorable to Hudson, the Court discerns nothing in the record supporting an inference that City Defendants knew or should have known that Mills had any propensities to engage in acts of sexual misconduct prior to hiring him.  Moreover, the background and psychological checks are sufficient to demonstrate City Defendants exercised reasonable care in hiring Mills.  Therefore, the Court concludes there are no genuine issues of material fact and grants City Defendants' motion for summary judgment with respect to Count Ten.

      c.     Negligent retention

Negligent retention occurs "when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge or reassignment."  *See Magnuson*, 531 N.W.2d at 857 (quoting *Yunker,* 496 N.W.2d at 423).  Hudson argues City Defendants were negligent in their investigation and in allowing Mills to continue his patrol routes after learning of Hudson's complaints.

Hudson submitted evidence that City Defendants were aware of allegations of sexual misconduct against Mills by early August.  Moreover, while the dates of the alleged incidents are unclear, Hudson asserts that her third encounter with Mills occurred in early to mid August.  Therefore, it is conceivable that the third encounter occurred after City Defendants learned of her

complaints.   Accordingly, Hudson has submitted evidence sufficient to raise a fact issue regarding whether City Defendants knew Mills was engaging in inappropriate sexual behavior with Hudson prior to the third alleged encounter.   While City Defendants claim they conducted a reasonable investigation into Mills' alleged encounters with Hudson, Hudson has designated specific facts showing there is a genuine issue for trial.   Viewing the record in the light most favorable to Hudson, a reasonable juror could conclude City Defendants' were negligent in the pace and adequacy of their investigation into the allegations against Mills and by allowing Mills to remain on patrol duty for several weeks after learning of Hudson's complaints.   *See Longen*, 113 F. Supp. 2d at 1375.   Accordingly, the Court denies Defendants' motion for summary judgment on Count Eleven.

d.      Negligent supervision

"[N]egligent supervision is the failure of the employer 'to exercise ordinary care in supervising the employment relationship, so as to prevent the foreseeable misconduct of an employee from causing harm to other employees or third persons.'"   *Magnuson*, 531 N.W.2d at 858 (quoting *Cook v. Greyhound Lines, Inc.*, 847 F. Supp. 725, 732 (D. Minn. 1994)).   This theory of recovery derives from the doctrine of respondeat superior.   *Id*.   Therefore, for liability to attach, there must be some connection between Mills' acts and City Defendants' "premises or chattels."   *Yunker*, 496 N.W.2d at 422.

Here, City Defendants concede the incidents at issue occurred within work-related limits of time and space.   There is no dispute that the alleged encounters between Mills and Hudson occurred in a police car while Mills was in uniform and on duty.   In addition, as explained above in the discussion of negligent retention, Hudson submitted evidence sufficient to raise a fact issue regarding whether City Defendants knew Mills was engaging in inappropriate sexual

behavior with Hudson prior to the third alleged encounter.  Thus, there is genuine issue of fact

with respect to whether further harassment of Hudson by Mills was foreseeable.  In addition,

Hudson has designated specific facts showing there is a genuine issue as to whether City

Defendants exercised reasonable care in their supervision of Mills by failing to immediately

inform him of Hudson's allegations and by allowing him to remain on patrol duty after learning

of Hudson's complaints.  *See, e.g.*, *Mandy v. Minn. Mining & Mfg.*, 940 F. Supp. at 1463, 1471

(D. Minn. 1996) (holding plaintiff stated a claim for negligent supervision by alleging that after

she reported sexual harassment on the part of an employee, his continued harassment was

foreseeable to the employer, and that employer failed to take further action).  Accordingly, the

Court denies Defendants' motion for summary judgment on Count Twelve.

3.      *MHRA claims*

Hudson alleges several claims against City Defendants for violations of the MHRA.  The

MHRA provides:

> It is an unfair discriminatory practice to discriminate against any person in
> the access to, admission to, full utilization of or benefit from any public service
> because of race, color, creed, religion, national origin, disability, sex, sexual
> orientation, or status with regard to public assistance or to fail to ensure physical
> and program access for disabled persons unless the public service can
> demonstrate that providing the access would impose an undue hardship on its
> operation.

Minn. Stat. § 363A.12.

a.      Sexual harassment

The MHRA defines discrimination to include sexual harassment.  *See* Minn. Stat.

§ 363A.03, subd. 13.  "Sexual harassment" consists of:

> unwelcome sexual advances, requests for sexual favors, sexually motivated
> physical contact or other verbal or physical conduct or communication of a sexual
> nature when:

(1)     submission to that conduct or communication is made a term or condition, either explicitly or implicitly, of obtaining employment, public accommodations or public services, education, or housing;

(2)     submission to or rejection of that conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing; or

(3)     the conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment.

*Id.*, subd. 43.

In Count Fourteen of her Complaint, Hudson alleges Mills' conduct constitutes sexual harassment discrimination in public services.  Hudson asserts City Defendants are liable for Mills' actions because Mills harassed her during the scope of his employment and because Mills is not entitled to official immunity.  City Defendants move for summary judgment arguing they are not vicariously liable under the MHRA for Mills' conduct because Hudson has failed to show that City Defendants knew or should have known of any sexual harassment by Mills prior to Hudson's allegations of misconduct and because Hudson's allegations were promptly investigated and resulted in Mills' termination.[11]

The parties dispute whether there is a distinction under the MHRA between the standard for vicarious liability for sexual harassment in an employment setting and the standard for vicarious liability in other settings, such as public services and public accommodations.  Hudson argues City Defendants, as municipal actors, are not entitled to avoid liability by demonstrating that they took prompt, remedial action because in the public service context there is no

---

[11]     City Defendants do not argue that Mills' alleged conduct does not constitute sexual harassment or that it did not create a hostile public services environment.

employer-employee relationship between the victim of discrimination and the public actor or entity.  Instead, Hudson argues that certain immunities are available to public entities.[12]  Hudson further argues that, under the MHRA, a municipality need not be placed on notice of discriminatory conduct before holding the municipality liable for the sexual harassment of its employees.  In support, Hudson cites to *City of Minneapolis v. Richardson*, 239 N.W.2d 197 (Minn. 1976), wherein the Minnesota Supreme Court held that a single act of racial discrimination by a municipal employee involving public services is enough to fix liability on a municipality under the MHRA.  239 N.W.2d at 203.

City Defendants, on the other hand, assert that the Court should look to the standards for vicarious liability in federal hostile environment case law in the employment setting in assessing Hudson's public-services harassment claim under the MHRA.  In support, City Defendants argue that when interpreting the MHRA, Minnesota courts often look to principles derived from Title VII of the Civil Rights Act.  In addition, City Defendants note that while a previous definition of sexual harassment in the MHRA provided a different vicarious liability standard in the employment context, as opposed to the public services context, the statute currently makes no such distinction.  City Defendants argue, therefore, that employer liability standards under Title VII should be applied in the public services context under the MHRA.

For present purposes, the Court assumes, without deciding, that standards for employer liability in federal hostile environment case law apply to Hudson's public-services harassment claim under the MHRA.  Even applying these standards, City Defendants' motion for summary judgment on Hudson's MHRA sexual harassment claim fails.  Using the federal standards proposed by City Defendants, Hudson would be required to establish that City Defendants knew

---

[12]     Hudson asserts, and Defendants do not dispute, that Mills is not entitled to official immunity and City Defendants are not entitled to vicarious official immunity.

or should have known of the harassment and failed to take prompt and effective remedial action.

*See Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990, 993 (8th Cir. 2003).   For the reasons

discussed above in the discussion of negligent retention and supervision, Hudson has

demonstrated the existence of a fact issue with respect to whether City Defendants knew of

sexual harassment perpetrated by Mills prior to the third alleged encounter.   A reasonable juror

could conclude that City Defendants knew or should have known of the harassment.   In addition,

as to the issue of whether City Defendants took prompt remedial action, a reasonable juror could

conclude that after learning in early August of Mills' alleged encounters with Hudson, City

Defendants did not take prompt remedial action reasonably calculated to end the harassment.

Accordingly, the Court denies City Defendants' motion with respect to Count Fourteen.

      b.      Racial harassment

In Count Fifteen, Hudson alleges Mills' actions constitute discrimination based on race

because Mills believed race was a proxy for potential criminal activity.   Hudson, however, has

failed to demonstrate that her mistreatment was in any way related to her race.   This showing is

required.   *See* Minn. Stat. § 363A.12 ("It is an unfair discriminatory practice to discriminate

against any person in the access to, admission to, full utilization of or benefit from any public

service *because of* race, color, creed, religion, national origin, disability, sex, sexual orientation,

or status with regard to public assistance . . . .") (emphasis added).   Accordingly, the Court grants

City Defendants' motion with respect to this claim and dismisses Count Fifteen insofar as it is

asserted against City Defendants.

      c.      Reprisal

In Count Sixteen, Hudson also asserts a claim of reprisal discrimination, arguing that she

was referred to federal prosecution in retaliation for complaining about Mills' actions.   City

Defendants argue that Hudson failed to present any evidence that  anyone in the department referred her case for federal prosecution because of her complaint against Mills.

The MHRA states, in relevant part:

> It is an unfair discriminatory practice for any individual who participated in the alleged discrimination . . . to intentionally engage in any reprisal against any person because that person . . . [o]pposed a practice forbidden under this chapter or has filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

Minn. Stat. § 363A.15.  The three-part *McDonnell-Douglass* burden shifting applies to retaliation claims.  *See Hubbard v. U. S. Press Int'l, Inc.*, 330 N.W.2d 428, 444 (Minn. 1983).  To establish a prima facie case, Hudson must establish that she engaged in statutorily protected conduct, an adverse action by City Defendants, and a causal connection between the two.  *Id.*; *Johnson v. Can. Pac. Ltd.*, 522 N.W.2d 386, 391 (Minn. Ct. App. 1994), *rev'd on other grounds*, 536 N.W.2d 319 (Minn. 1995).

Hudson does not address City Defendants' argument in her opposition papers.  Nor has Hudson proffered any evidence to support this claim, in particular evidence that she was prosecuted federally because she complained about Mills.  Accordingly, the Court grants City Defendants' motion on this claim and dismisses Count Sixteen.

> d.      Aiding and abetting discrimination

In Count Seventeen, Hudson alleges Mills and other unknown officers violated her rights to equally enjoy public services by being free of sexual and racial harassment.  Aiding and abetting under the MHRA is established by a showing that the defendant "[i]ntentionally . . . aid[ed], abet[ted], incite[d], compel[led], or coerce[d] a person to engage in any of the practices forbidden by this chapter."  Minn. Stat. § 363A.14.  On its face, this provision requires intentional conduct.  The proof required to sustain a claim under this section is similar to that

required for actual malice.  *See Davis v. Hennepin County*, 559 N.W.2d 117, 123 (Minn. Ct. App. 1997).

City Defendants argue there is no evidence to support this claim.  Hudson does not address City Defendants' argument in her opposition papers and has failed to point to any evidence in the record to support the claim as it is asserted against City Defendants.  Therefore, the Court grants City Defendants' motion on this claim and dismisses Count Seventeen insofar as it is asserted against City Defendants.

## III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.    City Defendants' Motion for Summary Judgment [Docket No. 27] is GRANTED IN PART and DENIED IN PART.

2.    Counts One, Two, Three, Four, Six, Eight, Nine, Thirteen, Fifteen, and Seventeen of Hudson's Complaint are DISMISSED WITH PREJUDICE insofar as they are asserted against City Defendants.

3.    Counts Seven, Ten, and Sixteen of Hudson's Complaint are DISMISSED WITH PREJUDICE.

Dated:  March 23, 2006

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge